**Brian J. Jacobs (State Bar No. 107788)**
**6464 Woodman Avenue, Suite 103**
**Van Nuys, California 91401**
**(310)  770-6874  (Telephone)**
**(310)  858-6489  (Facsimile)**
**brianjacobs21@yahoo.com  (Email)**

Attorney for Plaintiff
LARRY BROWN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -- WESTERN DIVISION

| | |
|---|---|
| LARRY BROWN,<br><br>               Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>               Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number:5:12-cv-02009-TJH (SPx)<br><br>**SECOND AMENDED COMPLAINTFOR;**<br>  **1. VIOLATION OF18 U.S.C. § 1962 (c)**<br>  **2. WRONGFUL FORECLOSURE**<br>  **3. REFORMATION**<br>  **4. INJUNCTIVE RELIEF**<br>  **5. DECLARATORY RELIEF**<br>  **6. CANCELLATION OFINSTRMENTS**<br>  **7. UNFAIR BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17220 ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

///
///
///
///

Plaintiff Larry Brown alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action (the "Action") pursuant to 18 U.S.C. §1964(c), because it is based, inter alia, on the Racketeer Influenced and Corrupt Organizations Act, as amended, 18 US.C. §§1961 et seq. This Court possesses supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. §1337. Venue is conferred by 28 U.S.C. §1391 (b), as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

2.    Plaintiff Larry Brown (hereinafter, "Plaintiff") brings this Action as the assignee of Life Savers Concepts Association, Inc., a North Carolina corporation, and certain affiliates thereof (collectively hereinafter, "Life Savers"). Life Savers, in term, is the assignee of the claims of the individuals listed on Exhibit "A" attached hereto (collectively hereinafter, the "Assignors"), and it is solely in the capacity of assignee of the respective Assignors that Plaintiff appears herein. Plaintiff is now, and at all times herein mentioned was, a citizen of the State of California. (The street addresses of the Assignors have been redacted pursuant to Local Rule 5.2-1 in this and all subsequent exhibits.)

3.    Plaintiff is informed and believes, and thereon alleges, that defendant Bank of America, N.A. (hereinafter, "BofA") is now, and at all times herein mentioned was, a nationally chartered bank and at all times did business in the County of Los Angeles, State of California. BofA is the lead bank within Bank of America Corporation, a financial holding company  On or about July 1, 2008, Bank of America Corporation purchased Defendant Countywide Financial Corporation, a Delaware corporation and the parent company of Countrywide Home Loans, Inc., a New York corporation (hereinafter, "Countrywide"). The latter corporation was in the business of providing residential mortgage loans.  Plaintiff is informed and believes, and thereon alleges, that following the acquisition, Countrywide changed its name to "BAC Home Loans Servicing, LP." BofA is a member of

SECOND AMENDED COMPLAINT

MERS (as hereinafter defined).

4.  Plaintiff is informed and believes, and thereon alleges, that defendant BAC Home Loans Servicing, LP (hereinafter, "BAC") is a limited partnership and a subsidiary of BofA and at all times did business in the County of Los Angeles, State of California.  Plaintiff is informed and believes, and thereon alleges, that following Bank of America Corporation's acquisition of Countrywide, BAC assumed responsibility for servicing loans previously serviced by Countrywide.

5.  Plaintiff is informed and believes, and thereon alleges, that defendant ReconTrust, N.A. (hereinafter, "ReconTrust") is now, and at all times herein mentioned was, a wholly-owned subsidiary of BofA of unknown form that provides trustee services in connection with defaulting loans in a number of states, including California, and at all times did business in the County of Los Angeles, State of California. ReconTrust is a member of MERS.

6.  Plaintiff is informed and believes, and thereon alleges, that Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter, "MERS")is now, and at all times herein mentioned was, a Delaware corporation engaged in the business of holding title to mortgages, and at all times did business in the County of Los Angeles, State of California. Plaintiff is further informed and believes, and therefore alleges, that MERS in turn is the wholly-owned subsidiary of Merscorp, Inc. (hereinafter, "Merscorp"), which is, and at all times herein mentioned was, a Delaware corporation, with its principal place of business located in the City of Reston, Fairfax County, State of Virginia.

7.  Plaintiff is informed and believes, and thereon alleges, that The Bank of New York Mellon (hereinafter, "Mellon"), f/k/a The Bank of New York, is now, and at all times herein mentioned was, a nationally chartered bank, and at all times did business in the County of Los Angeles, State of California. Mellon is a member of MERS.

8.  Plaintiff is informed and believes, and thereon alleges, that defendant U.S. Bank, N.A. (hereinafter, "U.S. Bank") is now, and at all times herein mentioned was, a nationally

chartered bank, and at all times did business in the County of Los Angeles, State of California. U.S. Bank is a member of MERS.

9.    Plaintiff is informed and believes, and thereon alleges, that defendant Aurora FSB (hereinafter, "Aurora") is now, and at all times herein mentioned was, a federal savings bank chartered under the laws of the United States, and at all times did business in the County of Los Angeles, State of California. Aurora is a member of MERS.

10.    Plaintiff is informed and believes, and thereon alleges, that defendant JPMorgan Chase Bank, National Association (hereinafter, "Chase") is now, and at all times herein mentioned was, a national bank chartered under the laws of the United States, and is the successor and assignee of Washington Mutual Bank (hereinafter, "Washington Mutual"), a federal savings association, by way of a takeover by the Office of Thrift Supervision on February 28, 2008. Chase is a wholly-owned subsidiary of JPMorgan Chase & Co. (hereinafter, "JPMorgan"), which is now, and at all times herein mentioned was, a corporation organized under the laws of Delaware. Chase is a member of MERS.

11.    Plaintiff is informed and believes, and thereon alleges, that defendant Ocwen Loan Servicing, LLC (hereinafter, "Ocwen"), is now, and at all times herein mentioned was, a limited liability company organized under the laws of the State of Florida, and at all times did business in the County of Los Angeles, State of California. Ocwen is a member of MERS.

12.    Plaintiff is informed and believes, and thereon alleges, that defendant Wells Fargo Bank, N.A. (hereinafter, "Wells Fargo") is now, and at all times herein mentioned was, a national bank chartered under the laws of the United States, and at all times did business in the County of Los Angeles, State of California.

13.    Plaintiff is informed and believes, and thereon alleges, that Cal-Western Reconveyance Corporation (hereinafter, "Cal-Western") was, and at all times herein mentioned was, a corporation organized under the laws of the State of California, and at all times did business in the County of Los Angeles, State of California. At various times, Cal-Western

Reconveyance Corporation was also known as EC Closing Corp. In May 2013, substantially all of the assets of Cal-Western Reconveyance Corporation were purchased by Butler & Hosch, P.A. and transferred to an entity named Cal-Western Reconveyance, LLC with Cal-Western Reconveyance, LLC retaining all of the professionals from the former corporation, along with all of the operating systems, records, and intellectual assets. Subsequently, EC Closing Corp. filed for protection under the U.S. Bankruptcy code. In re: EC Closing Corp., 13-11619-BLS (Bankr. D. DE 06/25/2013). Until Plaintiff can determine whether Cal-Western Reconveyance, LLC is a successor or whether to participate in the EC Closing bankruptcy, Cal-Western Reconveyance Corporation is named solely for purposes of identification.

14.   Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of defendants named in this action as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of Does 1 through 10, inclusive, when the same become known to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of defendants designated as Does 1 through 10, inclusive, is legally responsible in some manner for the acts and occurrences alleged herein, and was an actual and proximate cause, and substantial factor, of the injuries and damages to Plaintiff, as herein alleged.

15.   Plaintiff is informed and believes, and thereon alleges, that each of defendants named in this Complaint, including all defendants named as Does 1 through 10, inclusive, was at all times herein relevant the authorized agent, employee or representative of one of more of the remaining defendants, and that, in doing the things herein alleged, was acting within the course and scope of such agency, employment or representation.

16.   Defendants BofA, Countrywide, BAC, ReconTrust, MERS, Mellon, U.S. Bank, Aurora, Chase, JPMorgan, Ocwen, Wells Fargo, Cal-Western and Does 1 through 10, inclusive, unless referred to specifically, will hereinafter be referred to collectively as "Defendants".

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17.    Each of the Assignors designated by number in Column A of Exhibit "A" and by last name in Column B of Exhibit "A" and by first name in Column C of Exhibit "A" encumbered the property whose address is listed in Column D of Exhibit "A" (the "Property") by a deed of trust (a "Deed of Trust") in the county of California listed in Column E of Exhibit "A." The APN for each Property is set forth in Column F of Exhibit "A." If the Property was, at any time, subject to a Deed of Trust which was in the MERS system, the MERS Mortgage Identification Number ("MIN") is set forth in Column G of Exhibit "A" and the bank associated with the MIN is set forth in Column H of Exhibit "A." All of the Assignors have these events in common, and all of the aforesaid information set forth in Exhibit "A," including the related Deeds of Trust, is incorporated herein by this reference as though fully set forth herein.

18.    The Assignors are further divisible into three categories. One group has not had foreclosure proceedings initiated, and the Assignor designation numbers of such Assignors set forth in Column A of Exhibit "A" are set forth in Exhibit "B" attached hereto.

19.    For each of the members of the second group of Assignors, a notice of default and election to sell under deed of trust (a "Notice of Default") has been recorded. The Notices of Default each reflected that the respective mortgage loans secured by the Assignor's Deeds of Trust (the "Assignor Loans") had been purportedly transferred to the trustee (the "Trustee") of a securitized trust organized under New York or Delaware law (the "Trust"). In addition, an assignment document purporting to assign to the Trust the Deed of Trust and the Assignor's promissory note which it secured (the "Promissory Note") may have been recorded. Information concerning the second group of Assignors is incorporated herein by this reference as though fully set forth herein and set forth in Exhibit "C" attached hereto.

20.    For each of the members of the third group of Assignors, a trustee's deed upon sale (a "Trustee's Deed") was recorded.  The Trustee's Deeds each reflect that the respective Properties of the designated Assignors have been sold at foreclosure. Information concerning

the third group of Assignors is incorporated herein by this reference as though fully set forth herein and set forth in Exhibit "D" attached hereto.

21.   For both the second and third groups of Assignors, each of the Assignor Loans purportedly had been placed in a Trust. In other words, the Assignor Loans were securitized. The respective Trust had issued investment bonds in a mortgage-backed Trust.  Plaintiff alleges that these securities were duly registered with the Securities and Exchange Commission (hereinafter, the "SEC"). In this process, many mortgage loans – as many as 5,000 for a single entity – are bundled together and transferred to a passive entity, typically a Trust, which holds the loans and issues investment securities, usually referred to as "certificates," that are repaid from the mortgage payments made by the homeowners on the loans. Crucial to this process is compliance by the Trust with the provisions of the Internal Revenue Code concerning the pass-through treatment of the Trust as a "REMIC," that is, a "Real Estate Mortgage Investment Conduit," pursuant to the provisions of 26 U.S.C. §860A-860G.

22.   Each of the Assignments, in turn, was made to a Trustee pursuant to a Pooling and Servicing Agreement (previously defined as a "PSA"), the trust instrument that sets forth the powers and limitations of the entity serving as Trustee for the Trust. The Trustee is responsible for performing certain calculations relating to distributions on the certificates, making payments on the certificates, acting as certificate registrar and transfer agent for the Trust, making payments to the swap provider under a swap agreement, and holding the trust accounts.

23.   The PSA sets forth all the rights, powers, obligations and duties of the Trust.  The four corners of the PSA bind the Trust to the only actions which can lawfully be taken with respect to the administration of its assets.  Further, the four corners of the PSA establish the only mechanism by which the Trust may acquire, transfer, dispose of, or sell any asset.  The PSA is filed with the SEC and is a matter of public record.

24.   In particular, the governing statutes provide that a REMIC must have a closing date

(previously defined as the "Closing Date") and that any contribution to the Trust not either made by the Closing Date or within the ensuing three-month period will result in the imposition of a tax "equal to 100% of the amount of such contribution." 26 U.S.C. §860G(d)(1). Accordingly, in each case the Trust's PSA provides that all intervening assignments and endorsements leading up to their inclusion in the Trust MUST be present. Specifically, prior to the Closing Date, the Depositor (as defined in the PSA) agreed to deliver to the Custodian (as defined in the PSA) all of the Promissory Notes, endorsed in blank, with all intervening endorsements showing a complete chain of endorsements from the originator to the Person endorsing such Promissory Note(each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as note holder or assignee thereof, in and to that Promissory Note). Plaintiff alleges that in each case, the date of the Assignment of the Deed of Trust and the Promissory Note to the Trustee of the Trust was more than three months after the Closing Date, in violation of the PSA applicable to each respective Trust.

25.    Plaintiff further alleges that in order for each of the Trusts to have had a valid and enforceable security interest against the perspective Properties, the Trusts must prove that they each received an endorsement of the Promissory Note prior to the Closing Date of the Trust and that it had physical possession of the Promissory Note. Absent such proof, the Trust has no standing to foreclose on the Property of Plaintiff's Assignor otherwise subject thereto. In this connection, the governing law applicable to the Trusts provides that any act of the Trustee in contravention of the PSA is void, especially with respect to the purported acceptance of untimely mortgage loan transfers, which would jeopardize the Trust's status as a REMIC.

26.    Therefore, since none of the Assignments were made within the time period specified in the PSA's for the respective Trusts, Plaintiff is informed and believes, and thereon alleges, that none of the Defendants, in their capacity as Trustees of the respective Trusts, had the power to take the Assignment of the respective Assignors' Deeds of Trust.

27.   As the respective Trustees for each of the Trusts could not be the beneficiaries of the Assignor's respective Deeds of Trust at the time the Trustee's Deeds were recorded, each of the foreclosure sales of the Properties owned by the third group of Assignors is void.

28. With respect to certain members of the third group of Assignors, the stated beneficiary of the Deed of Trust is MERS. MERS is a wholly-owned subsidiary of Merscorp, a membership organization formed by and comprised of lenders, servicers and other industry companies in the residential mortgage market. Merscorp owns and operates what is known as the "MERS System", which is an electronic registration system that tracks changes in both the beneficiary interests in, and servicing rights to, mortgage loans that are registered on the system as they change hands throughout the life of the mortgage loans.

29. At loan origination by a member of the MERS System (hereinafter, a "MERS Member"), the borrower, or, in the within Action, the Assignor, agrees in the Deed of Trust that MERS, as the nominee of the lender, will serve as mortgagee of record. Typically, the Deed of Trust will provide, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." The Lender takes possession of the Promissory Note, and the Deed of Trust is recorded in the local county recorder's office.

30. Merscorp thereupon monitors any changes in the beneficial ownership of, and the servicing rights to, the mortgage loan. Noting that promissory notes are generally transferred by delivery without any related filing or recording, any sale by the original lender of the Promissory Note is tracked by the MERS System, and as long as a MERS Member remains the owner of the Promissory Note, MERS will remain the beneficiary of record of the Deed of Trust as the nominee for the new beneficial owner of the Promissory Note. The Deed of Trust need not be assigned because, pursuant to the agreement of participants in the MERS System, MERS is automatically designated as nominee for the successor beneficial owner. At such time, however, as the Promissory Note is sold or transferred to a party who is not a MERS Member, an assignment from MERS to the non-member is provided by MERS, that

assignment is recorded in the country where the Property is located, and the Deed of Trust is "deactivated" from the MERS System.

31. MERS is neither a lender nor a servicer, and it has stated in litigation that it does not own promissory notes. In the standard form of Deed of Trust, it is stated, "MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the property, and to take any action required of Lender including, but not limited to releasing and cancelling this Security Instrument." Plaintiff contends that the "take any action" language in Deeds of Trust in which MERS is named as beneficiary applies solely to the Deed of Trust and not to the underlying Promissory Note, in which MERS is never mentioned.

32. Under California law, however, the transfer of a Deed of Trust without the underlying Promissory Note is ineffective, and, in fact, the transfer of the Promissory Note alone makes transfer of the Deed of Trust unnecessary. In recognition of this fact, all of the Assignments which are at issue in this case purport to assign both the beneficiary interests in the Deed of Trust and the underlying Promissory Note. Because MERS is not a payee or otherwise the owner of any of the Promissory Notes, and because none of the Promissory Notes nor the Terms and Conditions subscribed to by the MERS Members purport to empower MERS to assign them, MERS in each case cannot transfer the respective Promissory Notes, and all of the Assignments of the Deeds of Trust executed by MERS are therefore ineffective. Examples of improper and untimely attempts to transfer rights to or from a Trust are set forth in Exhibit H attached hereto. In each instance, an ineffective attempt was made to transfer rights in a  Deed of Trust associated with a specific Assignor. Such transfers were, and are, void *ab initio,* and, therefore, of no effect. However, as a result of such transfers various of the Defendants took, or threatened to take, actions  which damaged the Assignors.

33. Finally, one unusual aspect of the MERS System is that MERS operates in respect of its mortgage loan activities through a network of Certifying Officers, who are themselves officers of the MERS Member on whose behalf MERS is acting and who are appointed as officers with limited authority to act on behalf of MERS through a corporate resolution appointing such Certifying Officers under the MERS Rules of Membership. In this case, it was the lender or servicer of each of the respective Assignor Loans which arranged for its employees, officers or agents to act on behalf of MERS.

## FIRST CAUSE OF ACTION – VIOLATION OF 18 U.S.C. §1962 (c)

### (Against BofA, Mellon, U.S. Bank, Chase and Wells Fargo)

35. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

36. Each of the above named Defendants is a "person" within the meaning of 18 U.S.C. §1961 (3).

37. MERS is an "enterprise" within the meaning of 18 U.S.C. §1961(4).

38. Each of Defendants was "associated with" the aforesaid enterprise in that such Defendant either actively took part in the scheme to defraud Plaintiff's Assignors whose Deeds of Trust are or were in the MERS system, furthered such scheme by cooperation or request, lent aid or encouragement to the wrongdoers or ratified and adopted acts committed by other Defendants for such Defendants' benefit. In particular, pursuant to the rules of MERS, in connection with the execution and recording of each of the Assignments referenced hereinafter, the Defendant who was acting as the Trustee of the transferee Trust arranged for one or more of its employees, officers or agents to be designated as Certifying Officers of MERS in order to execute the Assignment.

39. During the relevant times, the activities of the enterprise alleged herein have affected interstate commerce in that MERS has conducted the subject foreclosures hereinafter described on a nationwide basis.

40. During the relevant times, the foreclosure sales conducted by the Trusts of which Defendants were Trustees with respect to each of the respective Properties owned by Plaintiff's Assignors whose Deeds of Trust are or were in the MERS system hereto were in every case void because, as alleged in paragraphs 20 through 27 of this Complaint, each such Trustee's purported acceptance of the Assignment purporting to assign the Promissory Note and Deed of Trust following the expiration of the three-month period after the Closing Date was void. In addition, because MERS cannot transfer any of the Promissory Notes, as set forth in paragraphs 28 through 32 of this Complaint, MERS could not and cannot transfer the related Deeds of Trust, and all of MERS's aforesaid Assignments failed for this second and independent reason.

41. The scheduling and conducting of the sale of the respective Properties owned by Plaintiff's Assignors whose Deeds of Trust are or were in the MERS system hereto by way of void foreclosure sales constituted, in each case, a scheme to defraud and to obtain money by false pretenses.

42. During the relevant times, and in furtherance and for the purpose of executing the scheme or artifice to defraud alleged in paragraph 41 of this Complaint, each of the respective Defendants, through its employees, officers or agents acting as Certifying Officers of MERS, caused to be used mail depositories of the United States Postal Service by placing or causing to be placed mailable matter in said depositories, each such use of the mails in connection with the scheme or artifice to defraud and to obtain money by means of false pretenses constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. §1341, such mailable matter including, but not limited to, the Assignments relating to the respective Properties owned by Plaintiff's Assignors whose Deeds of Trust are or were in the MERS system.

43. Plaintiff is informed and believes, and thereon alleges, that each of the sales evidenced by the Trustee's Deeds of property owned by Plaintiff's Assignors whose Deeds of Trust are or were in the MERS system was followed by the deposit, no later than five (5) days after

SECOND AMENDED COMPLAINT

the recording date of the Trustee's Deed of the proceeds of such sales with the Trustee of the foreclosing Trust.

44. During the relevant times, the deposit of the aforesaid sales proceeds took place in the United States within the meaning of 18 U.S.C. §1957(d)(1).

45. The aforesaid sales proceeds constituted "criminally derived property" within the meaning of 18 U.S.C. §1957(f)(2).

46. The deposit to each of the respective Defendants' bank accounts of the aforesaid sales proceeds constituted a "monetary transaction" within the meaning of 18 U.S.C. §1957(f)(1).

47. Plaintiff is informed and believes, and thereon alleges, that each of the respective Defendants engaged in the aforesaid monetary transactions knowing that the sales proceeds constituted criminally derived property.

48. The aforesaid sales proceeds were derived from "specified unlawful activity" within the meaning of 18 U.S.C. §1957(f)(3).

49. During the relevant times, the deposit to each of the respective Defendants' bank accounts of the sales proceeds of the respective Properties owned by Plaintiff's Assignors listed in Exhibit "G" hereto constituted the offense of engaging in monetary transactions in criminally derived property derived from specified unlawful activity as proscribed and prohibited by 18 U.S.C. §1957(a).

50. Each of the aforesaid violations by the respective Defendants of the statutes prohibiting mail fraud and engaging in monetary transactions in property derived from specified unlawful activity as hereinabove alleged constituted an instance of "racketeering activity" within the meaning of 18 U.S.C. §1961(1).

51. The multiple acts of racketeering activity by the designated Defendants were interrelated, part of a common and continuous pattern of fraudulent schemes, and perpetrated for the same or similar purposes, thus constituting a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

52.  In engaging in the above said actions, each of the aforesaid Defendants have become associated with and have conducted or participated in the conduct of the affairs of said enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(a), to wit:

(a)  multiple instances of mail fraud in violation of 18 U.S.C. §1341, as more particularly set forth in paragraph 42 of this Complaint; and

(b)  multiple instances of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. §1957(a), as more particularly set forth in paragraph 49 of this Complaint.

53.  In engaging in the aforesaid actions, each of the aforesaid Defendants have violated the provisions of 18 U.S.C. §1962(c).

54.  By reason of the violation of 18 U.S.C. §1962(c) committed by Defendants, Plaintiff's Assignors listed in Exhibit "G" have been injured in their business and property in a sum at present unknown, but in excess of an aggregate amount of $250,000,000.  Plaintiff will amend this Complaint to set forth said damages at such time as they have been ascertained.

## SECOND CAUSE OF ACTION – WRONGFUL FORECLOSURE

### (Against All Defendants)

55. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

56. Each of Plaintiff's Assignors listed in Exhibit "D" hereto lost their respective Properties to a foreclosure sale.

57. As set forth in paragraphs 20 through 27 above, Plaintiff alleges that with respect to each such Property, Defendants, and each them, failed to provide the Trustee of the Trust to which the Deed of Trust related to that Property had been assigned with an endorsement of the related Promissory Note prior to the Closing Date or the date three months following such date, so that such Trust lacked standing to foreclose on the Property.

58. Plaintiff further alleges that Defendants cannot prove that such Trust had an ownership in the Deed of Trust, as the documents recorded with the respective county recorder's offices indicate that the Deeds of Trust in each case were not assigned to the respective Trusts until the date following three months after their respective Closing Dates.

///

///

59. As a proximate result of the above described wrongful conduct by Defendants, Plaintiff's Assignors listed in Exhibit "D" hereto have suffered general and special damages in an amount to be proven at trial, but not less than an aggregate amount of $500,000,000.

### THIRD CAUSE OF ACTION – REFORMATION

### (Against All Defendants)

60. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

61. Each of Plaintiff's Assignors listed in Exhibits "E" and "F" hereto had recorded against their respective Properties Deeds of Trust.

62. As part of the understanding between Plaintiff's Assignors and Defendant lenders, it was intended that the Deeds of Trust be transferable. Specific provisions in each of the Deeds of Trust recited that the instruments were subject to transfer and discuss the mechanics and consequences of such transfers.

63.  The above-described Deeds of Trust fail to reflect the true intent of the parties, in that, as alleged in paragraphs 28 through 32 above, MERS, as a factual and legal matter, is and was incapable of transferring any of the Deeds of Trust from the moment they were executed. This arises from the fact that MERS's refusal, as a systematic policy, to take title to the Promissory Notes related to the Deeds of Trust means that MERS could not and cannot transfer the Promissory Notes and, therefore, cannot transfer the Deeds of Trust pursuant to applicable California law.

64. The above-described failure of the Deeds of Trust to reflect the true intent of the parties arose from a mutual mistake of Plaintiff's Assignors and the respective Defendants concerning the legal effect of the instruments.

65. To reflect the true intent of the parties, each of the Deeds of Trust should be reformed as a mortgage without a trustee or beneficiary and designating the current lender as mortgagee.

///

///

66. Any delay by Plaintiff in bringing this Action is reasonable and not prejudicial to Defendants in that Plaintiff was only just informed of the infirmity of the Deeds of Trust by counsel.

## FOURTH CAUSE OF ACTION – INJUNCTIVE RELIEF

### (Against All Defendants)

67. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

68. As set forth above, each of Plaintiff's Assignors listed in Exhibit "C" hereto has been threatened with foreclosure of his respective Property, which is unique.

69. Code of Civil Procedure section 526 (a) (1) provides that an injunction is proper "when it appears by the complaint that the plaintiff is entitled to the relief demanded, or any part thereof, and the relief consists in the restraining of the commission or continuance of the act complained of, either for a limited period or perpetually".

70. Plaintiff is entitled to the relief demanded in this Complaint, including the restraining and enjoining of the continuance of any foreclosure proceedings initiated against Plaintiff's Assignors listed in Exhibit "C" hereto, as Defendants seeking to foreclose have failed to demonstrate that they have the legal right to do so and have instituted the within referenced foreclosure proceedings on the basis of illegal and void instruments and documents.

71. If it is found that Defendants have moved forward with the respective threatened foreclosures, an injunction should be granted halting any further action and any pending trustee's sales should be determined to be illegal and ordered enjoined.

72. Code of Civil Procedure section 526(a)(2) provides that an injunction is proper "when it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action".

///

///

73. As set forth hereinabove, the commission or continuance of foreclosure proceedings during this litigation will result in irreparable harm to Plaintiff's Assignors listed in Exhibit "C" hereto, specifically, the loss of their respective unique Properties.

74. Code of Civil Procedure section 526(a)(3) provides that an injunction is appropriate "when it appears, during litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual".

75. This lawsuit has been filed after Defendants served Notices of Default and, therefore, if the sale is consummated during the pendency of this litigation, this is an act which violates the property rights of Plaintiffs' Assignors listed in Exhibit "C" hereto and would render any judgment in this case ineffectual, unless the Court were to enjoin the sale and stop any further action by Defendants which are contrary to Plaintiff's Assignors' respective rights in the Properties.

76. Code of Civil Procedure section 526(a)(4) provides that an injunction may be granted where "pecuniary compensation would not afford adequate relief".

77. As set forth above, Plaintiff's Assignors listed in Exhibit "C" hereto will suffer irreparable harm constituting of the loss of their unique and valuable residential real estate should the relief requested here not be granted, for which there is no adequate remedy at law.

78. As Defendants have not demonstrated a legal interest in any of the respective Promissory Notes or the Deeds of Trust, they have not, and cannot, show any harm, damages or impairment of any interest associated with the granting of the requested injunctive relief.

79. Plaintiff should not be required to post a bond as a prerequisite to granting the requested relief, as Defendants have no legal interest in the respective Promissory Notes or the Deeds of Trust and have predicated their illegal foreclosure activities on void instruments and documents.

///

## FIFTH CAUSE OF ACTION – DECLARATORY RELIEF

### (Against All Defendants)

80. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

81. Plaintiff requests declaratory relief pursuant to Code of Civil Procedure section 1060, which provides that any person interested under a written instrument or a contract who desires a declaration of his rights or duties with respect to property may, in the case of an actual controversy relating to the legal rights and duties of the parties, bring an original action in the court for a declaration of his rights or duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract, with the declaration having the force and effect of a final judgment and which may be had before there has been any breach of the obligation in respect to which the declaration is sought.

82. Each of Plaintiff's Assignors listed in Exhibit "B" hereto is a "person" within the meaning of Code of Civil Procedure section 1060.

83. There exists an actual controversy, as Defendants are anticipated to attempt to foreclose on the respective Properties as owned by Plaintiff's Assignors listed in Exhibit "B" hereto as evidenced by the respective Notices of Default already issued by Defendants to Plaintiff's Assignors listed on Exhibit "C" hereto.

84. Plaintiff further alleges that he has not been provided with any evidence that said Defendants have full and unencumbered legal title to any of the respective Promissory Notes and the Deeds of Trust, that any of the purported Assignments were recorded less than three months following the respective Closing Dates of the Trusts to which they were allegedly transferred and, therefore, are properly included in the Trust as required by the terms of the PSA governing each such Trust, or that any of the named Defendants to this Action qualify as a holder of the Promissory Note entitled to enforce the obligations set forth in the Promissory Note.

85. Code of Civil Procedure section 1062 provides that available remedies are cumulative and shall not be construed as restricting any remedy, and, further, that no party shall be precluded from obtaining additional relief based on the same facts.

86. Code of Civil Procedure section 1062.3 provides that actions brought under this chapter shall be set for trial at the earliest possible date.

**SIXTH CAUSE OF ACTION – CANCELLATION OF INSTRUMENTS**

**(Against All Defendants)**

87. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereof, inclusive, as if alleged herein in full.

88. Code of Civil Procedure section 3412 provides that "[a] written instrument in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to the person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled".

89. Written instruments that respectively purport to be Deeds of Trust executed by Plaintiff's Assignors hereto are presently in existence and of record in the official records of the respective counties listed in Column E of Exhibit "A."

90. Written instruments that respectively purport to be Notices of Default and Elections to Sell Under Deed of Trust executed by Plaintiff's Assignors listed in Exhibits "C" and "D" hereto are presently in existence and of record in the official records of the respective counties listed in Column E of Exhibit "A."

91. Written instruments that respectively purport to be Assignments of Deeds of Trust executed by Defendants are presently in existence and of record in the official records of the respective counties listed in Column E of Exhibit "A."

92. Written instruments that respectively purport to be Trustee's Deeds Upon Sale executed by Defendants are presently in existence and of record in the official records at the respective counties listed in Column E of Exhibit "A."

93. Each of the aforesaid instruments, although apparently valid on their face, is void.

94. The Deeds of Trust are void in view of the fact that MERS is the designated beneficiary therein so that, as described in paragraphs 28 through 32 above, such instruments are non-assignable from the moment they are executed and thus invalid.

95. The Notices of Default are void because the respective Trustees of the related Trusts could not be the beneficiaries of Plaintiff's Assignor's Deeds of Trust at the time the Notices of Default were recorded for the reason that the purported assignment of those interests to the respective Trustees were untimely and void.

96. The Assignments are void because, as discussed in paragraphs 20 through 27 above, those instruments were untimely and void.

97. The Trustee's Deeds are void because, as discussed in paragraphs 20 through 27 above, the Assignments were ineffective to confer standing on the Trusts, and the ensuing foreclosure sales were therefore void.

98. Plaintiff's Assignors will suffer serious and irreparable injury if the foregoing instruments remain outstanding in that each of them faces the loss of his unique and valuable real estate. Therefore, Plaintiff hereby applies to this Court for an ORDER determining that these instruments are void as to Plaintiff's Assignors and are canceled.

## SEVENTH CAUSE OF ACTION – UNFAIR BUSIENSS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §17220 ET SEQ.

### (Against All Defendants)

99. Plaintiff hereby refers to and incorporates by reference each allegation set forth in paragraphs 1 through 34 hereto, inclusive, as if alleged herein in full.

100. Business and Professions Code section 17220 et seq. prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of section 17200.

101. As more fully described above, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this day.

102. Specifically, as fully set forth above, Defendants, and each of them, have engaged and are engaging in deceptive business practices with respect to assignments of notes and deeds of trust, foreclosure of residential properties and related matters, among other things:

a.   Executing and recording false and misleading documents;

b.   Executing and recording documents without the legal authority to do so;

c.   Failing to disclose the principal for which documents were being executed and recorded in violation of Civil Code section 1095;

d.   Acting as beneficiaries and trustees without the legal authority to do so;

e.   Misrepresenting the foreclosure status of properties to borrowers, including Plaintiff's Assignors; and

f.    Other deceptive business practices, including those which may be uncovered during the course of discovery.

103. Plaintiff alleges that by engaging in the above-described acts and practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of Business and Professions Code section 17200 et seq.

104. Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and has given, Defendants, and each of them, an unfair competitive advantage over their competitors. The scheme implemented by Defendants, in collusion with one another, is specifically designed to defraud California consumers and enrich Defendants at the expense of consumers in this State.

105. The foregoing acts and practices have caused substantial harm to California consumers.

106. By reason of the foregoing, Defendants should be enjoined from continuing in such practices pursuant to Business and Professions Code sections 17203 and 17204. Moreover, as a result of the foregoing acts and conduct, Plaintiff's Assignors' respective credit ratings have been seriously damaged and their ability to get credit substantially impaired. Plaintiff's Assignors have suffered injury in fact and other members of the public, similarly falling victim to Defendants' deceptive schemes, are likely to be injured as well.

107. The harm to Plaintiff's Assignors and to members of the general public outweighs the utility of Defendants' policies and practices. Consequently, their policies and practices constitute unlawful business acts or practices within the meaning of Business and Professions Code section 17200. Moreover, the foregoing conduct promotes an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

108. Defendants' practices described above are likely to mislead the general public and, therefore, constitute a fraudulent business act or practice within the meaning of Business and Professions Code section 17200. Defendants' unfair, unlawful and deceptive business practices present a continuing threat to members of the public in that other consumers will

be defrauded into having their properties improperly sold in foreclosure. Plaintiff's Assignors and other members of the general public have no other adequate remedy of law.

109. Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under Business and Professions Code section 17200 and related sections. The acts and practices described in the foregoing paragraphs are unfair and violate Business and Professions Code section 17200 because they constitute violations of all the statutes previously listed as well as California Civil Code section 1709, which provides that "[one] who will fully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

WHEREFORE, Plaintiff prays for judgment and order against the Defendants, and each of them, as follows:

///

///

### ///**FOR THE FIRST CAUSE OF ACTION**

### **(Against B of A, Mellon, U.S. Bank, Chase and Wells Fargo)**

1.  For compensatory damages in an amount to be proved at trial, but in excess of $250,000,000, such sum to be duly trebled in accordance with 18 U.S.C. §1964(c).

2.  For equitable and injunctive relief as might be appropriate in accordance with 18 U.S.C. §1964(c), including:

    a.  reasonable restrictions on the future activities and investments of Defendants;

    b.  an equitable accounting of all benefits, consideration and profits received directly or indirectly or underlying, including, but not limited to, the imposition of a constructive trust with tracing; and

    c.  The imposition and execution of equitable liens.

### FOR THE SECOND CAUSE OF ACTION

### (Against All Defendants)

1.      For general damages in an amount to be proved at trial, but in excess of $500,000,000.

2.      For special damages in an amount to be proved at trial, but in no event less than the minimum jurisdiction of this Court.

### FOR THE THIRD CAUSE OF ACTION

### (Against All Defendants)

1.      For the reformation of each of the Deeds of Trust otherwise designating MERS as the named beneficiary, to embody the true agreement of the parties, modified to become mortgages with the current holder of the related Promissory Note as mortgagee.

### FOR THE FOURTH CAUSE OF ACTION

### (Against All Defendants)

1.      That the Court issue a temporary restraining order, preliminary injunction and permanent injunction restraining Defendants, and each of them and their agents, attorneys, successors and representatives, and all persons acting in concert or participation with them, from selling, attempting to sell, or causing to be sold any of the Properties either under the powers of sale in the respective Deeds of Trust by nonjudicial sale or by foreclosure action.

### FOR THE FIFTH CAUSE OF ACTION

### (Against All Defendants)

1.      That the Deeds of Trust, the Notices of Default, the Assignments and the Trustee's Deeds are void;

2.      That none of Defendants holds an ownership interest in any of the respective Promissory Notes or Deeds of Trust;

SECOND AMENDED COMPLAINT

3.    That none of Defendants has authority to enforce the obligations set forth in any of the respective Promissory Notes;

4.    That any foreclosure proceedings already instituted are illegal and shall be reversed by Defendants.

### FOR THE SIXTH CAUSE OF ACTION

### (Against All Defendants)

1.    That the Deeds of Trust, the Notices of Default, the Assignments and the Trustee's Deeds and each of them, are void; and

2.    That Defendants deliver the aforesaid instruments, and each of them, to the Clerk of this Court for cancelation.

### FOR THE SEVENTH CAUSE OF ACTION

### (Against All Defendants)

1.    Pursuant to Business and Professions Code section 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them, be permanently enjoined from committing any acts of unfair competition in violation of section 17200, including, but not limited to, the violations identified in Plaintiff's Seventh Cause of Action.

### FOR ALL CAUSES OF ACTION

1.    Costs of suit; and

2.    Such other and further relief as the Court deems just and proper.


Dated: September 3, 2013                    /s/ Brian J. Jacobs___
                                            Brian J. Jacobs
                                            Attorney for Plaintiff
                                            Larry Brown


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

SECOND AMENDED COMPLAINT

1

2    Dated: September 3, 2013                    /s/Brian J. Jacobs____

3                                               Brian J. Jacobs
                                                Attorney for Plaintiff
4                                               Larry Brown

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28